

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

|  |  |
|---|---|
| **RAQUEL TORRES,** | **Case No.: SACV 12-01854-CJC(JPRx)** |
| **Plaintiff,** | |
| **vs.** | |
| **NUTRISYSTEM, INC.,** | **ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| **Defendant.** | |

## I. INTRODUCTION

Plaintiff Raquel Torres filed this putative class action on behalf of herself and others similarly situated against Defendant Nutrisystem, Inc. ("Nutrisystem") in Orange County Superior Court on September 18, 2012.  The case was removed to this Court on October 24, 2012, (Dkt. No. 1), and Ms. Torres filed her First Amended Complaint ("FAC") on November 20, 2012, (Dkt. No. 13).  In her FAC, Ms. Torres alleges that

Nutrisystem frequently recorded her and other customers' telephone calls without notice, in violation of California's Invasion of Privacy Act, California Penal Code §§ 632 and 637.2.  California Penal Code § 632 prohibits recording confidential communications over a telephone without the consent of all parties.  Similarly, California Penal Code § 632.7 prohibits recording communications involving a cellular phone without the consent of all parties.  Before the Court is Ms. Torres' motion for class certification pursuant to Federal Rule of Civil Procedure 23.  Ms. Torres seeks to certify a class of "[a]ll persons located in California whose telephone conversations with Defendant were recorded by Defendant without disclosure at any time," for the period of September 18, 2011 through October 3, 2012 (the "Class Period").  (FAC ¶ 14.)  For the following reasons, the Court **DENIES** Ms. Torres' motion.

## II.  BACKGROUND

Ms. Torres alleges that she called Nutrisystem's 1-800 number from a wireless telephone in August 2012.  (FAC ¶ 8.)  Ms. Torres spoke to a Nutrisystem employee, and provided the employee with her name and social security number, and discussed her insecurities related to her weight.  (*Id.*)  Ms. Torres was not informed that her conversation was being recorded.  (*Id* ¶ 9.)  Only later did she learn that Nutrisystem records all of its incoming telephone calls.  (*Id.* ¶ 10.)  Ms. Torres alleges that she did not consent to the recording of her call, and expected that it would be private.  (*Id.* ¶¶ 10–11.)

Ms. Torres alleges that her experience is not unique.  Nutrisystem recorded all inbound calls to its customer service representatives during the Class Period.  (Dkt. No. 17-2, Ferrell Decl. Exh. D ["Payson Depo."] 7:24–8:3.)  During this time, Nutrisystem used an automated phone system, called the Avaya system, to greet and direct callers.  (Dkt. No. 20-1 ["Crossman Decl."] ¶ 5.)  When a person called a Nutrisystem 1-800

number, the person would be immediately greeted with the following automated message ("Welcome Message"):

> Welcome to Nutrisystem.  Now you can lose weight and learn to keep it off with our most complete program ever: Nutrisystem Success.  For quality and training purposes your call may be monitored or recorded.

(*Id*. ¶¶ 6–7.)  The caller would hear "for quality and training purposes your call may be monitored or recorded" (the "Disclosure") within 9 seconds of the start of the Welcome Message, and the Disclosure would conclude within 12 seconds.  (*Id*. ¶ 8.)  After hearing the Disclosure, the caller was presented with several options to further direct her call.  (*Id*. ¶ 10.)  For example, the caller was told to press (1) to place an order or learn more about Nutrisystem Success or press (2) if she was an existing customer calling about an order.  (*Id*.)  Although the caller was not alerted to these options until the entire Welcome Message had played, if the caller pressed a button at any time during the Welcome Message, she would be redirected immediately.  (*Id*. ¶ 11; Payton Depo. 17:25–18:9.)  Therefore, if the caller pressed a button within 9 seconds of the beginning of the Welcome Message, she would be redirected without hearing the Disclosure.  The call would be recorded once the caller was successfully redirected to a customer service representative.  (Payton Depo. 8:17–9:8.)  On October 3, 2012, Nutrisystem modified the Avaya system so that callers could no longer bypass the Disclosure in this manner.  (*Id*. 18:25–19:24, 20:14–18.)

Ms. Torres estimates that 39,819 California calls to Nutrisystem were recorded during the Class Period without the caller having heard the Disclosure.  (Pl.'s Mem. at 6; Ferrell Decl. Exh. E.)  This number was arrived at through a review of Nutrisystem's TASKE records.  TASKE is a system Nutrisystem employed during the Class Period to track callers' actions throughout the Avaya system.  (Crossman Decl. ¶ 19.)  TASKE

records how long a caller was connected at each point in the call, and what options the caller selected. (*Id.*) These records are tracked by phone number. (*Id.* ¶ 21.) The only way to determine which individual called from a particular number is to listen to the recorded call, assuming that the caller identified herself during the call. (*Id.* ¶¶ 21–22.) Nutrisystem maintains TASKE records dating back to January 6, 2011. (*Id.* ¶ 24.)

## II.  ANALYSIS

"[D]istrict courts retain wide discretion in class certification decisions . . . ." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010) (en banc), *rev'd on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). Federal Rule of Civil Procedure 23(a) sets forth four requirements for maintenance of a class action. Under Rule 23(a), a class may only be certified if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The moving party bears the burden of demonstrating that she has met the four requirements of Rule 23(a). *Comcast Corp. v. Behrend*, __ S.Ct.__, No. 11-864, 2013 WL 1222646, at \*4 (U.S. Mar. 27, 2013). "[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* (internal quotations omitted).

In addition to satisfying the four requirements of Rule 23(a), the party seeking certification must show that the action falls within one of the three subsections of Rule 23(b). In this case, Ms. Torres seeks certification pursuant to 23(b)(3) and 23(b)(2). Rule 23(b)(3) permits certification of cases in which "the court finds that the questions of

law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### A.  Commonality

Class certification is inappropriate because Ms. Torres has not satisfied the commonality requirement of Rule 23(a).[1]  To satisfy the commonality requirement, the plaintiff must establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   This language "is easy to misread, since [a]ny competently crafted class complaint literally raises common questions." *Wal-Mart*, 131 S. Ct. at 2551 (internal quotations omitted).  For example, the Supreme Court stated that in a discrimination case against Wal-Mart, the following questions, though common to all class members, were not sufficient to show commonality: "Do all of us plaintiffs indeed work for Wal–Mart?  Do our managers have discretion over pay?  Is that an unlawful employment practice?  What remedies should we get?" *Id*.  Instead, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury, which does not mean merely that they have all suffered a violation of the same provision of law." *Id*. (internal quotations omitted).  The "claims must depend on a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

---

[1] Because Ms. Torres cannot satisfy the commonality requirement of Rule 23(a), the Court need not address the numerosity, typicality, and adequacy requirements of the rule.

Ms. Torres argues that commonality is "easily satisfied" because "this case is based on Defendant's identical conduct, which caused the same injury to both Plaintiff and Class Members." (Pl.'s Mem. at 9.) Ms. Torres points to four questions "which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any Class member . . . : (a) Whether Defendant intentionally records or monitors *confidential* telephone communications; (b) Whether Defendant obtains *consent* before intentionally recording or monitoring *confidential* telephone communications; (c) Whether Defendant's conduct constitutes a violation of [the] California Penal Code . . . ; (d) Whether, as a result of Defendant's misconduct, Plaintiff and the Class are entitled to damages, restitution, equitable relief and other relief . . . ." (*Id.* at 10–11 (emphasis added).) Ms. Torres argues that these "common questions will generate common answers in a class-wide proceeding," thus satisfying the commonality requirement. (*Id.* at 11.) However, the answers to these questions are likely to vary significantly among class members given that the confidentiality and consent issues require individualized factual inquiries into the circumstances of each class member.[2]

### 1. Confidentiality

California Penal Code § 632 prohibits recording a *confidential* communication over a telephone without the consent of all parties. "[A] conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal.

---

[2] In her Reply Brief, Ms. Torres argues that there are actually only two questions relevant to show commonality: (1) whether each class member's call was recorded and (2) whether the class member's call was recorded without disclosure of such recording. (Pl.'s Reply at 11.) Given how the proposed class is constructed, the answers to these are likely to be the same for all class members. These questions, however, are comparable to those rejected by the Supreme Court in *Wal-Mart*, and therefore are not sufficient to show commonality. The driving force in this case will be the litigation of the confidentiality and consent issues, which are not common to all class members.

4th 766, 776–77 (2002); *see Frio v. Superior Court*, 203 Cal. App. 3d 1480, 1488 (1988). "The issue whether there exists a reasonable expectation that no one is secretly listening to a phone conversation is generally a *question of fact that may depend on numerous specific factors*, such as whether the call was initiated by the consumer or whether a corporate employee telephoned a customer, the length of the customer-business relationship, the customer's prior experiences with business communications, and the nature and timing of any recorded disclosures." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396, (2011) (emphasis added); *see Faulkner v. ADT Sec. Services, Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013) ("In the context of a business-related telephone call, courts have looked to the circumstances surrounding the call to divine whether the [confidentiality] standard has been met . . . .").

To determine whether each class member had an expectation of confidentiality would require a detailed factual inquiry into the circumstances of each call.  It is likely that some class members expected their calls to be recorded, even if they did not hear the Disclosure.  This is especially true given that it is common practice for businesses to record customers' communications with their customer service representatives.  Even if all class members were to assert an expectation of confidentiality, the trier of fact would still need to determine whether each class member's expectation was objectively reasonable.  The trier of fact would need to consider, among other things, the length of the class member's relationship with Nutrisystem, whether the class member made prior phone calls to Nutrisystem, and whether the class member had previously heard the Disclosure.

Nutrisystem provides the call histories of several putative class members to illustrate the diversity of factual circumstances likely to arise when considering confidentiality.  (*See* Crossman Decl. ¶ 39.)  The telephone number ending in 62xx, for example, called Nutrisystem a total of three times on March 25, 2012, with only the last

phone call being recorded.  (*Id.* ¶ 39(d).)  The first phone call was made at 7:10 p.m. and was abandoned after spending more than 13 seconds on the Welcome Message.  (*Id.*)  Because the Disclosure occurred within 9 seconds of the start of the Welcome Message, the caller likely heard the Disclosure during this call.  (*Id.*)  The second call was made at 7:42 p.m., and again lasted more than 13 seconds before being abandoned.  (*Id.*)  The third call occurred one minute later, at 7:43 p.m., and was redirected less than nine seconds after the start of the Welcome Message.  (*Id.*)  This last call was recorded, and would make the caller a class member in this case.

Contrast that situation with the call history of the telephone number ending in 30xx.  (Crossman Decl. ¶ 38(a).)  This number placed a total of six phone calls to Nutrisystem within the Class Period.  (*Id.*)  The first four calls occurred within a four minute span on September 18, 2011.  (*Id.*)  Each of these calls lasted more than 13 seconds after the start of the Welcome Message, but each was abandoned before being recorded.  (*Id.*)  The fifth call occurred on February 18, 2012, and likewise lasted for more than 13 seconds without being recorded.  (*Id.*)  The sixth call occurred several months later, on August 31, 2012, and resulted in the caller being redirected and recorded prior to hearing the Disclosure.  (*Id.*)   This caller would also be a class member.

The call histories of these two numbers illustrate the diverse factual circumstances that will need to be considered in the course of litigating the confidentiality issue.  While it is likely that both callers heard the Disclosure at some point prior to the recorded call, it is an open question whether the Disclosure affected the caller's expectations of confidentiality.  For example, it is probable that the first caller would assume that the third call would be recorded, given that she likely heard the Disclosure one minute prior

to making the recorded call.[3]  The confidentiality question for the second caller is more difficult.  This caller also likely heard the Disclosure, but it occurred several months prior to the recorded call.  It is therefore more probable that the second caller had an expectation of confidentiality.  *See Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1399 (2011) ("[Defendant's] recorded call-monitoring disclosure stated: '*This* call may be monitored or recorded for quality control purposes,' which would not necessarily inform a borrower that that this call *and all future calls* with [Defendant] may be monitored or recorded." (emphasis in original)).  Of course, this analysis assumes that the callers actually heard the Disclosure at some point.  It is possible that different people used the same phone number to make the prior calls.  It is also possible that the prior calls were made over a bad connection, and the callers were not able to hear or understand the Disclosure.  This simply illustrates the many individual factual issues that are likely to arise in the course of litigating the confidentiality issue.

Even if the class were limited to phone numbers that had never called Nutrisystem in the past, yet somehow bypassed the Disclosure, there would still be a number of individual issues that would likely arise.  Nutrisystem estimates that only 4,766 phone numbers called Nutrisystem and bypassed the Disclosure on their first call to Nutrisystem during the Class Period.  (Crossman ¶ 33.)  Of these, it is possible that some callers heard the Disclosure prior to the beginning of the Class Period, or prior to January 6, 2011, the last date on which Nutrisystem has records.  Nutrisystem also estimates that of these 4,766 calls, 2,747 callers had prior experience with the Avaya system based on their numerical selection during the Welcome Message.  (*Id*. ¶ 34.)  For example, 554 callers pressed 7, which directed them to enter a specific extension for a Nutrisystem employee.  (*Id*.)  A number of callers, 1,753, pressed 2, the extension for existing customer, then

---

[3]  If this caller were to assert that she actually expected the third call to be confidential, a trier of fact could determine that such an expectation was objectively unreasonable given that she had heard the Disclosure one minute prior to the recorded call.

immediately pressed a number for the next level of the phone tree. (*Id.*) The choice of extensions strongly indicates that these callers had previous histories with Nutrisystem's phone systems, which would make it more likely that they had been exposed to the Disclosure at some point. This could be explained by the possibility that these callers had previously called Nutrisystem using a different phone number. However, it is impossible to know for certain without an individual factual inquiry into the circumstances of these calls. The result of these individual factual inquiries would then need to be considered by the trier of fact to determine whether the confidentiality issue was satisfied for each class member.

Ms. Torres contends that confidentiality is not at issue because Nutrisystem has admitted that all recorded calls are confidential. (Pl.'s Reply at 11.) Ms. Torres points to Mr. Payson's deposition testimony that Nutrisystem considers all of its recordings to be confidential, primarily because customers often provide credit card information. (Payson Depo. 31:10–32:21.) It is unlikely, however, that Mr. Payson was using "confidential" as it is defined in § 632. In fact, it would be nonsensical to conclude that Nutrisystem considered the communications to be confidential within the meaning of § 632 given that Nutrisystem and its employees were aware that the calls were being recorded. More importantly, the issue of confidentiality for purposes of § 632 is based on the caller's expectation, not Nutrisystem's. *See Faulkner v. ADT Sec. Services, Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013) ("[Plaintiff] would have to allege facts that would lead to the plausible inference that his was a confidential communication — that is, a communication that *he had an objectively reasonable expectation* was not being recorded." (emphasis added)). Therefore, Nutrisystem's classifications of the calls are irrelevant.

///

///

## 2.  Consent

The issue of whether class members consented to the recordings would also require a detailed factual inquiry for each class member, likely resulting in varying responses to the consent issue.  Both California Penal Code § 637 and § 637.7 require that the recording be made without the consent of all parties.  Ms. Torres contends that consent is not actually at issue in this case because those callers who bypassed the Disclosure were never given the opportunity to consent.  (Pl.'s Reply at 9–10.)  Therefore, she argues, the only issue is whether callers were recorded without hearing the Disclosure, which would be true of all class members, by definition.  However, whether a caller heard the Disclosure during the recorded call does not conclusively answer the question of consent.  For example, a caller like the 62xx caller, who did not hear the Disclosure on the recorded call but did hear it on a previous call made less than a minute prior, likely implicitly consented to the recording.  The question is much more difficult for the 30xx caller, who heard the Disclosure several months prior to the recorded call.  Additionally, callers who never heard the Disclosure, but actually expected the calls to be recorded, may have implicitly consented to the recording by the very act of making the call.  For the same reasons discussed in connection with the confidentiality issue, to determine whether each class member consented would require a detailed factual inquiry into the individual circumstances of each call.  This factual inquiry is likely to result in varying answers to the question of consent.

## B.  Predominance

Even if Ms. Torres' proposed class satisfied the commonality requirement, it does not satisfy the predominance requirement.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  It is similar

-11-

to the commonality requirement of Rule 23(a)(3). *Id.* at 623 n.18. But predominance is a more demanding requirement than the Rule 23(a)(3) commonality prerequisite. *Comcast*, 2013 WL 1222646 at *4; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg. Overtime Pay Litig.)*, 571 F.3d 953, 959 (9th Cir. 2009). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

Ms. Torres argues that common issues predominate "because all of Plaintiff's claims are based on the identical action that Defendant uniformly takes on every single telephone call to the proposed Class members." (Pl.'s Mem. at 19.) Specifically, Ms. Torres argues that the main issue in this case is whether Nutrisystem unlawfully recorded customer telephone calls "without the knowledge or consent of its callers, and what are the damages." (*Id*.) Ms. Torres asserts that these "are all common issues that can be easily proven on a class-wide basis." (*Id*.) The Court, however, finds that the individual inquiries required to resolve the consent and confidentiality issues for each class member will dominate the litigation in this case. These issues are central to the claims, and for the reasons previously discussed, will require individualized factual inquiries.

## C.  Injunctive Relief

Ms. Torres also fails to show that certification is proper under Rule 23(b)(2), which allows for certification if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Fed. R. Civ. P. 23(b)(2).  Ms. Torres seeks "permanent injunctive relief enjoining Defendant . . . from engaging in this illegal practice."  (FAC Prayer ¶ 1.)  Presumably, the illegal practice Ms. Torres is referring to is Nutrisystem's prior practice of recording calls in which the caller had bypassed the Disclosure.

Ms. Torres has failed to satisfy Rule 23(b)(2) because her claim for injunctive relief appears to be moot.   It is undisputed that, as of October 2012, Nutrisystem no longer allows callers to bypass the Disclosure.  However, "an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to their old ways." *Allee v. Medrano*, 416 U.S. 802, 810–11 (1974) (internal quotations omitted).  Claims for injunctive relief only become moot "if subsequent events show that the activities could not reasonably be expected to recur." *Olagues v. Russoniello*, 770 F.2d 791, 794 (9th Cir. 1985) (internal quotations omitted).

Nutrisystem has satisfied this "heavy burden" of showing that the activity is not reasonably expected to occur. *Id.*  The evidence before the Court shows that Nutrisystem allowed callers to bypass the Disclosure out of convenience for the callers.  (Crossman Decl. ¶ 15.)  There is no indication that Nutrisystem would have maintained this policy had it realized it was subjecting itself to potential liability.[4]  Now that it is aware that the practice is potentially in violation of California law, Nutrisystem is unlikely to pursue it again.  Accordingly, the Court finds that there is no reasonable expectation that Nutrisystem will continue to allow callers to bypass the Disclosure.

---

[4] For that reason, this case is different from *Kight*, in which the plaintiff alleged that a finance company was secretly monitoring calls regarding sensitive financial information to assist in debt collection efforts. *Kight*, 200 Cal. App. 4th at 1384.

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Ms. Torres' motion for class certification.

DATED:     April 8, 2013

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE